**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JAMES L. CHATFIELD,

    Petitioner

v.

DEB TIMMERMAN-COOPER,
WARDEN,

    Respondent.

CASE NO. 2:11-CV-00911
JUDGE JAMES L. GRAHAM
MAGISTRATE JUDGE E.A. PRESTON DEAVERS

## ORDER
## AND
## REPORT AND RECOMMENDATION

This matter is before the Court for consideration of Petitioner's Motion for Leave to Proceed *in forma Pauperis*. Upon consideration, the Court finds the Motion is meritorious, and, therefore, it is **GRANTED.**

**WHEREUPON, IT IS ORDERED THAT** the Petitioner be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid.

Petitioner, a state prisoner, brings the instant Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is before the Court pursuant to its own motion under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### FACTS AND PROCEDURAL HISTORY

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On June 25, 2008, the Perry County Grand Jury indicted Appellant

in Case No. 08CR0050 on five counts of breaking and entering, four counts of theft, and one count of attempted theft. A warrant was issued for Appellant's arrest. It appears from the docket, Appellant was arrested sometime in December, 2008, or early January, 2009. Appellant appeared before the trial court for arraignment on January 26, 2009, and entered a plea of not guilty to the charges contained in the Indictment. The trial court subsequently found Appellant indigent and appointed counsel for him.

On January 27, 2009, the Perry County Grand Jury issued a second Indictment against Appellant in Case No. 09CR0003. The Indictment charged one count of breaking and entering, and one count of theft. Both charges arose from an incident which occurred on or about November 2, 2008. Appellant appeared for arraignment in Case No. 09CR0003 on February 4, 2009, and entered a plea of not guilty to the Indictment.

The trial court scheduled Case No. 08CR0050 for trial on April 14, 2009. The trial court scheduled the jury trial in Case No. 09CR0003 for April 29, 2009. Appellant filed a Motion for Continuance in Case No. 08CR0050 on April 10, 2009. The trial court rescheduled the jury trial in Case No. 08CR0050 for April 28, 2009. Prior to the commencement of trial on April 28, 2009, defense counsel made an oral motion for continuance, advising the trial court he needed additional time to obtain police reports relative to a stolen vehicle which was allegedly used during the commission of some of the offenses. The trial court denied the request and commenced voir dire.

The following evidence was adduced at trial.

Deputy Daniel P. Corder with the Perry County Sheriff's Office testified he was dispatched to a business known as Tourcon on November 27, 2007, on an "alarm drop". When Deputy Corder arrived, deputies from the Licking County Sheriff's Office; Steve Dearlove, the owner; and Paul Brown, the owner of the building complex, were already at the scene. The deputy explained the offender had smashed open the front door of the business, but did not find the object which had been used to gain entrance. Deputy Corder was unable to lift any fingerprints at the scene. He was advised Paul Brown had observed a white Ford Explorer exiting the parking lot.

John Gillogly, the owner of Coop's Corner, testified his store was broken into on October 14, 2007. Despite numerous security measures, the offender was able to gain access into the store by

throwing a heavy block through glass windows which had been framed in with two-by-fours. The phone wires at the business had been cut. The offender also cut the locks of a gate securing cigarette cartons. Approximately $2,600.00 worth of cigarettes were stolen. Gillogly was able to provide law enforcement officers with a surveillance video taken that evening. The video depicted the offender, who entered the business with a large trash can, proceed behind the checkout counter, cut the locks on the security gate, and fill the trash can with cartons of cigarettes. The offender left the store after approximately three minutes. The exterior security camera caught the vehicle driving out of the parking lot and travel toward the interstate.

Deputy Lee Hawks, who was an investigator with the Perry County Sheriff's Office in 2006, and 2007, testified he was dispatched to Coop's Corner on October 14, 2007. One of the first shift employees had telephoned the Sheriff's Office regarding a break-in. Officer Hawks conducted a security sweep of the store as well as a preliminary look for evidence. The officer found a window on the southwest corner of the building had been completely smashed out, leaving shattered glass and pieces of plywood on the floor of the store under the window. Officer Hawks testified the padlocks, which secured the cage over the cigarettes, had been cut. Part of a concrete bench which was located outside the business had been used to smash through the glass window. Jeff Cook, a crime scene technician with BCI, came to the scene to assist Officer Hawks in processing the scene. Numerous footwear impressions were taken from the scene, all having the same tread wear pattern.

Deputy Hawks detailed the evidence compiled. Surveillance video was forwarded to evidence technicians at the Attorney General's Office for enhancement of the imagery. Still photographs of the suspect were made from the surveillance video. The photographs depicted a white male with dark hair and a beard, wearing a flannel jacket, and dumping cartons of cigarettes into a trash can. Surveillance video was subsequently obtained from Lake's End, a business adjacent to Tri-County Plumbing, which had also been broken into during the same time period. The surveillance video showed a white Ford Explorer traveling onto the Tri-County Plumbing parking lot, and leaving a short time later. The date and time feature of the surveillance video revealed the vehicle was in the parking lot at the same time the alarm went off at Tri-County. Deputy Hawks testified Pataskala police officers apprehended the driver and

passenger of a vehicle matching the description of the white Ford Explorer on November 30, 2007. The driver was identified as Appellant, and the passenger was identified as Christopher Carter. A Rubbermaid trashcan, a large rock, and a plaid flannel jacket were found in the vehicle.

Steve Dearlove, the owner of Tourcon, a rental business and supplier of Stihl products, testified the business was subject to three break-ins in November, 2007. Dearlove identified photographs of his business following each of the break-ins. He stated approximately ten saws and three or four blowers were taken during the first break-in. During the second break-in, $3,000 worth of saws, a weed eater, a drill and a generator were stolen. After the second break-in, Dearlove took extra precautions, using cables and wires to tie down the merchandise. No merchandise was stolen during the third break-in. During each break-in, the offender used rocks to gain access into the business.

Paul Brown testified he owns the strip mall in which Tourcon was located in November, 2007. Brown explained the strip mall is located in front of his house. Brown recalled the business had been broken into three times. Brown heard the alarm go off each time, and immediately proceeded to the building where he found the front door of the business smashed open with a rock. On the third occasion, when Brown was coming around the corner of the building, he observed a vehicle travel onto the road in front of the building and onto Route 13 at a high rate of speed. On cross-examination, Brown acknowledged he was not able to get the license plate number from the vehicle, which he described as a white Ford SUV. Brown noted there were no other vehicles on the roadway at the time.

Dave Bennett, the owner of Tri-County Plumbing, testified he received a call from the alarm company on November 27, 2007, alerting him his business had been broken into. Bennett was at home at the time, and immediately proceeded to his business. The first thing he noticed was the glass on the front door had been shattered and there was a large rock laying inside. Bennett noted his business is adjacent to the Lake's End.

Steve Dornon, the owner of Lake's End, testified he provided sheriff's deputies with a surveillance video taken from the exterior security cameras of his business on November 27, 2007, the evening on which Tri-County Plumbing was broken into for a third time. Dornon further testified Lake's End was subsequently broken into in

November, 2008. At approximately 11:30pm on November 2, 2008, the security system called him at home to advise him the alarm at the business had been set off. Dornon contacted the Sheriff's Office using his cell phone as he drove to Lake's End. When he arrived at the business, the alarm was going off. He observed a large rock, which had been thrown through the door, shattering the glass. He recalled the business had been ransacked, and merchandise and cash totaling almost $4,000, had been taken. Dornon had a surveillance system consisting of 13 cameras inside and outside the business which he reviewed that evening. The surveillance video revealed three individuals entering the business. Photographs taken from the video captured the suspect vehicle, an individual throwing a rock through the door, an individual at the checkout counter with shattered glass littering the floor, and the individuals removing merchandise.

Christopher Carter, who was incarcerated at Pickaway Correctional Institution as punishment for four breaking and entering convictions and four theft convictions out of Perry County, testified he and Appellant committed three breaking and enterings at Tourcon and one at Tri-County Plumbing in November, 2007. Carter stated on the first occasion, he and Appellant drove to Perry County in a blue Pontiac. They traveled past Tourcon and turned around in the parking lot of Coop's Corner. Carter mentioned breaking into Coop's Corner instead of Tourcon, but Appellant told him he (Appellant) had already broken into that business and knew it would not be possible to break back into the business. The two men traveled back to Tourcon. Carter recalled Appellant threw a rock and shattered the glass door. The two proceeded inside, taking chainsaws, Carhartt clothing, and other merchandise. They returned to Columbus and sold the items to different people. When Carter and Appellant traveled to Tourcon the second time, they drove in a black SUV type of vehicle which they had stolen from Carter's friend. Again, Appellant gained access to the business by throwing a rock through the door. Carter and Appellant stole chainsaws and other equipment, which they subsequently sold. Carter noted the first two break-ins occurred within days of each other.

On the third occasion, Carter and Appellant traveled to Tourcon in a white Ford Explorer. Appellant threw a rock through a glass door. The two men went inside, and attempted to grab chainsaws, however, the merchandise had been fastened down. From there, Carter and Appellant traveled to Tri-County Plumbing, which was located one block away from Tourcon. Appellant utilized the same means of entrance, throwing a rock through the glass door. Once inside,

Appellant and Carter took a generator and other merchandise. Carter stated he and Appellant were caught a few days later in Licking County. Carter was able to identify the flannel coat Appellant wore during all of the break-ins. On cross-examination, Carter acknowledged he had entered into a plea bargain with the State in exchange for his testimony against Appellant.

Jeffrey Cook, a special agent with the Bureau of Criminal Investigation and Identification, testified he was summoned to Perry County in regard to a breaking and entering which occurred at Coop's Corner on October 14, 2007. Deputy Lee Hawks was on the scene when Cook arrived. They conducted an initial walk-through of the business. Hawks showed Cook the surveillance video which had been taken during the break-in. Because the intruder appeared to be wearing gloves, the two officers decided not to dust for fingerprints. Instead, Cook focused on finding footwear impressions. Cook located a footwear impression on a padded mat on the floor behind the checkout counter. Cook photographed the impression and also lifted the impression using an epoxy silicone material.

Ted Manasian, a forensic scientist in the Trace Evidence Unit of the Bureau of Criminal Identification and Investigation, testified he examined a pair of brown boots, which were the suspected footwear of Appellant, and compared them to the footwear impression taken by Jeffrey Cook. During his examination of the boots, Manasian recovered glass fragments embedded in the tread of the sole. Manasian had also been provided with glass pieces recovered from the scene which he examined for the presence of footwear impressions. In looking at all of the questioned impressions, silicone casts, glass pieces as well as the photographs from the crime scene, Manasian found two of the impressions to be the same tread design and size as the left boot submitted from Appellant. Four of the impressions were found to be the same tread size and design as the right boot from Appellant. Manasian could not say to the exclusion of any other boot Appellant's boots made the impressions. He noted he was unable to find any identifying characteristics.

Sergeant Kevin Starrett, an investigator with the Perry County Sheriff's Office, testified he investigated a breaking and entering which occurred at Lake's End on November 2, 2008. When he arrived at the scene, the first thing he noticed was the glass of the front door had been shattered. A large rock was found approximately fifty feet inside, underneath a clothing rack. Sgt. Starrett and Scott Dornon reviewed the video from the surveillance cameras of the business.

>Dornon made a copy of the security video for the police. Sgt. Starrett noted pictures had been printed from the security surveillance footage. One picture depicted a white male entering through the front door of the business, who was subsequently identified as Appellant. Other photographs depicted Appellant and an accomplice, walking through the front door, and Appellant collecting Carhartt clothing. Deputy Starrett played the surveillance video taken from six different camera views at Lake's End, which revealed Appellant loading items into the back of a vehicle, entering the vehicle, and driving away.
>
>Jennifer Metz, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation, testified she examined seven different latent fingerprints she received from the Perry County Sheriff's Office on November 12, 2008. Of the seven prints, Metz found one sufficient print, however, she was unable to determine to whom the print belonged. She could not identify the print as belonging to Appellant.
>
>Appellant called Sean Gray. Gray testified he was the owner of a Chevrolet HHR which had been stolen sometime in November, 2007. Gray stated he recovered the vehicle on either November 21, or 22, 2007.
>
>After hearing all the evidence and deliberating, the jury found Appellant guilty of all of the counts contained in both Indictments. The trial court ordered a pre-sentence investigation. Appellant was ultimately sentenced to a prison term of eighty-two months and ordered to pay restitution.

*State v. Chatfield*, No. 09-CA-11, 2010 WL 2170239, at *1-5 (Ohio App. 5th Dist. May 26, 2010).

Petitioner timely appealed, raising the following assignments of error:

>I. THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT A CONTINUANCE WHICH DEPRIVED THE APPELLANT DUE PROCESS AND THE EFFECTIVE ASSISTANCE OF COUNSEL.
>
>II. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A MISTRIAL DUE TO OTHER EVIDENCE PRESENTED.

*Id.* at *5.  On May 26, 2010, the appellate court affirmed the judgment of the trial court.  *Id*.  On October 13, 2010, the Ohio Supreme Court dismissed Petitioner's subsequent appeal as not involving any substantial constitutional question.  *See Exhibit to Petition*.

In his Petition and supplemental motion for leave to proceed *in forma pauperis*, Petitioner raises, in detail, matters related to his attempt to obtain public records from the State of Ohio. [1] Although the issue of Petitioner's request for public records, as well as the state courts' determinations with respect to the same are not relevant to the instant habeas proceedings, the Court sets for the following limited history in this regard:

> On April 28, 2010, while his appeal was still pending before this Court, Appellant filed a Motion for Request for Justiciable Finding for Public Records R.C. 149.43(B)(8). The State filed a memoranda contra. Via Entry filed May 11, 2010, the trial court found Appellant's motion, "to not be proper at this time" as Appellant "is represented by Court Appointed Attorney Deborah Lamneck". May 11, 2010 Entry. Also on May 11, 2010, Appellant filed a motion to correct his April 28, 2010 motion. Later on that same day, the trial court issued an entry, finding the second motion to not be proper as Appellant was represented by court appointed counsel. . . .

*State v. Chatfield,* No. 10CA12,  2010 WL 3508993, at *1 (Ohio App. 5th Dist. Sept. 8, 2010). Petitioner appealed the trial court's entry denying his request for public records.  On September 8, 2010, the appellate court sustained Petitioner's assignments of error, reversed the judgment of the Perry County Court of Common Pleas, and remanded the case to the trial court.  *Id*.  Additionally, Petitioner "filed a Complaint for Writ of Mandamus against Joseph Flautt, the Perry County

---

[1] Petitioner seems to indicate that these documents could potentially exonerate him of the crimes for which he has been convicted and sentenced.  This Court, however, when sitting in habeas corpus jurisdiction, considers only the judgment of the State court that placed him in custody and analyzes claims related to the merits of that adjudication.  *See* 28 U.S.C. § 2254(d).  Petitioner's case involving access to public records is not before this Court.

Prosecuting Attorney, alleging failure to comply with the Public Records Act." *State ex rel. Chatfield v. Flautt,* No. 11-CA-6, 2011 WL 4138762, at *1 (Ohio App. 5th Dist. Sept. 6, 2011). On September 6, 2011, the Court of Appeals denied the request for a writ of mandamus. *Id.* Petitioner indicates that his appeal in the Ohio Supreme Court remains pending, and this Court is unable to determine from the record the status of any such an appeal.

On October 12, 2011, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner asserts that (1) he was denied effective assistance of trial and appellate counsel, denied the right to prepare a defense when the trial court refused to grant a continuance, (2) denied a fair trial due to admission of other acts evidence and perjured testimony by prosecution witnesses, constituting prosecutorial misconduct, (3) denied a fast and speedy trial, and (4) denied effective assistance of trial counsel because his attorney abandoned the alibi defense, filed the wrong alibi defense, failed to investigate, call witness, supply a jury instruction, refused to cross examine witnesses or present any defense; denied effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of ineffective assistance of trial counsel.

## EXHAUSTION

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). Where alternative state remedies are available to consider the same

9

claim, exhaustion of one of these remedies is all that is necessary.

Here, among other claims, Petitioner asserts he was denied effective assistance of appellate counsel. It does not appear he has ever presented this claim to the Ohio courts. Further, although the time period has expired to file an application to reopen the appeal under Ohio Appellate Rule 26(B), Petitioner still may pursue a delayed Rule 26(B) application. *See* Ohio Appellate Rule 26(B)(2)(b). Therefore, this claim remains unexhausted. Moreover, the record fails to reflect that a stay of proceedings would be appropriate.

In *Rhines v. Weber*, 544 U.S. 269 (2005), the United States Supreme Court held,

> [A] stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

*Id.* at 277.

It does not appear that Petitioner can establish good cause for his failure, to date, to pursue application to reopen the appeal in the state appellate court. *See Pace v. DiGuglielmo*, 544 U.S. 408 (2005) (A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court); *Riner v. Crawford*, 415 F.Supp.2d 1207, 1209-11 (D. Nevada 2006) (discussing the various standards adopted by courts to determine what may constitute good cause within the meaning of *Rhines* ). Further, the record provides no basis to conclude that Petitioner's claim of ineffective assistance of appellate counsel is potentially

meritorious. Again, it appears unlikely Petitioner will be able to establish "good cause" for failing, to date, to pursue a Rule 26(B) application, as required under Ohio law. *See Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005)(claims are "plainly meritless" for purposes of deciding whether to grant a stay of proceedings where the petitioner is procedurally barred from raising his unexhausted claims in the state courts). For these reasons, a stay and abeyance is not appropriate.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** without prejudice as unexhausted. Petitioner may attempt to exhaust his claims in the State court with respect to his assertion of ineffective assistance of appellate counsel. Alternatively, Petitioner alternatively may delete and withdraw his unexhausted claim of ineffective assistance of appellate counsel and proceed on his remaining claims by notifying the Court of this intention within **FOURTEEN (14) DAYS** of the date of this Report and Recommendation.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation*

de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED.**

<u>  s/  *Elizabeth  A. Preston Deavers*</u>
Elizabeth A. Preston Deavers
United States Magistrate Judge

Date:  November 3, 2011